Alliance for Water Efficiency v. Fryer Mr. Katzenbach. Yes. Since you've read our briefs, you know our position. I am sure you have questions based on what I've seen today. But I would like you to sort of perhaps do the following, a little bit of a different approach from what's in our brief. Well, before we get to anything that's in the brief, I've got some questions about jurisdiction. And it's not going to be the jurisdictional question you're expecting. My initial question about jurisdiction is whether there is appellate jurisdiction in this case. Because I can't figure out what you're appealing from. We're appealing from the final order that was issued by the judge in this case, which directs him to comply with the prior orders of the judge. Yes. And is that an appealable order? Yes. It's either an injunction and appealable is an injunction. There are two possibilities, and it's obvious from your brief that neither side appreciates what's gone wrong in this case. Judgments have to be self-contained. Yes. They have to have their own terms in them. And a document stating you must comply with my opinion is not a judgment. I agree. I mean, you're correct. Absolutely. Yeah, well, you agree, but it's beyond dispute. Did anybody notify the magistrate judge in this case that nothing remotely looking like a proper judgment had been entered? No. I think, Your Honor — It's more than that. As you say, this is probably designed to be an injunction. If you look at Federal Rule of Civil Procedure 65d, it says that every injunction must state its term specifically and describe in reasonable detail, and not by referring to the complaint or other document, the act or acts restrained or required. So I've looked at this document. I can't figure out what acts are restrained or required. It refers to another document. It violates the first precept of injunctions. And we now have a jurisdictional problem, because we've said that you can't appeal from a document that is unenforceable. This document couldn't be enforced by a motion for contempt. It doesn't do anything. It's utterly ineffectual. And therefore, how is it appealable? Your Honor, this is the situation, and I see it. It's clear that throughout the course of these proceedings, the judge was issuing a bunch of orders. For example, he issued an order — It's clear the judge has issued a bunch of orders. It is not clear that the magistrate judge has issued even one order that is capable of being enforced. Oh, that's not true, Your Honor. And if you can't enforce the order, and the language I've quoted from Rule 65 makes it clear that there is nothing in this order that's enforceable, what are you appealing from? Well, Your Honor, I suppose — You don't — you're not, to put it otherwise, Mr. Katzenbach, your client is not under any legal obligation at all as a result of this order. And therefore, what's to appeal from? I guess the problem, Your Honor, is this. What's the situation if this court says this is not an enforceable order? Rule 65d says this is not an enforceable order. Very true. This is empty paper. Your Honor, we've made a number of arguments to the magistrate judge along similar lines, I believe, that he was trying to impose terms that we hadn't agreed upon, things like that, all without much success. So if you're answering the question, would it be in my client's interest to say, it does not comply with Rule 60, it's not an injunction, it's an empty piece of paper, as the court states, I think that would be a hard position to take unless this court were prepared to take it. Well, you've got a magistrate judge who doesn't know how to enter a proper judgment. I would assume — Right? And if the judge doesn't know how to enter a proper judgment, perhaps the judge doesn't know what's enforceable and what's not. And if the judge then enters an actually enforceable judgment, then you can appeal. And we would summarily reverse, because there's no enforceable judgment in this case. Now, it may be that what you want to do, or perhaps maybe what Mr. Wicks wants to do, if Mr. Wicks wants an enforceable judgment, is ask the magistrate judge to enter one. I'd be happy to — you know, I'm happy to do that. I don't know what the heck he's going to — I don't know that you want to do that, because so far as I can tell, you're the victor in this litigation, and Mr. Wicks is the loser. I imagine, Your Honor, that if we follow that suggestion, and I believe that it's not a suggestion I particularly like, but it's a suggestion which seems compelled. Well, this document is not an injunction. It doesn't appear to be a judgment. I am constantly appalled by the insouciance of lawyers toward the obligation, if they see that the district court has not entered a proper document, and often it's because the district court clerk hasn't entered the proper document, that you go and tell the judge and ask for a proper judgment, rather than waiting for the judge of the Court of Appeals to point this out to you six months later. Okay, Your Honor, I think that's not quite what happened. We asked for a judgment several times, but there's all off the record. So in our conversations, it was our understanding that the judge was going to issue a judgment, and I agree that he issued this. It's well-entitled judgment. I mean, if you look at the magistrate judge's opinion, he states, although I do not believe that the separate document requirement under Rule 58 Federal Rules of Procedure applies, given the history and procedural posture of this case, a form A.O. 450 will be entered contemporaneously with this order. I don't know what you do in the face of the judge just telling you— You go and cite Rule 65d. There is a rule about how to enter these rules. Very well, Your Honor. Your Honor, I appreciate that, and I think that if the court feels, and obviously if the panel feels that that's the appropriate approach, that's the way we will approach. I mean, obviously we can't— I obviously don't have any problem with doing that and coming back up here again, if that's the way it's going to be. Well, you won't be coming back again. Assuming the district judge actually enters an appealable document, then we will take the case on these briefs. So you might want to argue the merits, too. Very well, Your Honor. And so the point of what I was beginning with, the problem here, as I see it, apart from the problem the court identified, was that throughout this case, A.W.E. has been attempting to assert the rights of other parties. Earlier today, the court noted the Lexis case in the Supreme Court about constitutional standing and the three standards on that. And this case exemplifies a little bit of that problem. Namely, A.W.E. doesn't have a contract. He's asserting the rights of these funding agencies. It has suffered no injury, in fact, because it's not putting up any of its own money. It's not redressable because any claim that we would have against any claim for breach of these other contracts would be—A.W.E. couldn't resolve in a case where A.W.E. is the only party. So that in terms of looking at this case— Who would use real words that would help us? I assume by A.W.E. you mean— Alliance for Water Efficiency. The alliance. I'm sorry. Real words. We're generalists. Alliance would be a lot easier to follow. I'm sorry. Everyone uses the phrase A.W.E., and I apologize for that. The alliance basically is asserting the contract rights of people giving funding. They aren't here. Alliance asserts that people were dissatisfied.  They aren't present to even testify as to themselves. So one of the problems, and that impacts on the entire case, is that the lower court didn't have jurisdiction because of the problems associated with the fact that the alliance is trying to assert rights under contracts to which the other parties have the right to decide if the work was done right or not. The problem with the judge's approach on the settlement is that the judge assumes and says, this case needs to settle with my client, removing things from his report because these other parties are— it would be—I must be unsatisfied, where there's no evidence of such unsatisfaction. It creates a huge problem where there's no evidence of the predicate for the judge's position, and it seems to me that the case can't go forward on the theory that his position has any support. It seems to me that then we're in the situation where, on a bigger and broader level, you're saying, who would go into a settlement conference if they thought that a judge, after telling you one day that if you don't agree to a written document, what we say on the record is the limit of what the agreement is, to then find themselves embroiled in litigation where things are being added to this agreement again and again and again. Who would go to a settlement conference under those circumstances? And that really, in our opinion, undermines the whole process of settlement in this court or in the lower court. So, Your Honor, to put it in the simplest terms, this is a case where it starts out where there is really no subject matter jurisdiction whatsoever. Secondly, we are in a position where we are being told what we can include and not include in a report, which violates, I think, my client's First Amendment rights in a simple and straightforward way, particularly after the most recent case in the Supreme Court, the Reed v. Town of Gilbert. And so I think, Your Honor, when you get down to it, that is perhaps not the problem you identified, but the problem with this whole situation. So, if the Court has no further questions, I'll sit down. Not at the moment, it seems. Huh? Not at the moment. Thank you, Mr. Katzenbach. Mr. Wicks. Good morning, Your Honors. David Wicks on behalf of the Alliance for Water Efficiency. I guess just to address the first point that was raised, Mr. Katzenbach, our position would be that there was an enforceable order regarding the Santa Rosa data that was ordered to be turned over by Magistrate Judge Cole as of June 10th, when he specifically entered an order that said they're required to turn that data over. And then in October, he issued a memorandum and an opinion order that specifically set forth his findings and his rulings with respect to the parameters of the settlement agreement, and that those two orders set forth exactly what the, you know, the injunction, quote, unquote, the injunction is in this case and what the parameters of . . . And this complies with Rule 65D how? Well, I think it goes to . . . The only document that's included in the appellant's brief is this mystery order saying, comply with my opinions, right? And you agree, I assume, that that's utterly ineffectual. Well, I would agree that what Judge Cole was doing was saying that he didn't need to enter that order in the first place pursuant to Rule 58 and that the previous order saying . . . Well, he was wrong about that and he was wrong about its contents, and I can't see anything that . . . There's nothing that remotely satisfies Rule 65D, nothing that satisfies our repeated conclusion that judgments have to be self-contained. Why didn't you tell the magistrate judge that he might have to take a look at Rule 65D-1 and do what it says? Your Honor, obviously I did not appreciate and think that that was an issue under Rule 65. Our position, like I said, was that the January 7, 2015 order wasn't even necessary because there had already been a proper judgment ruling in the October 22, 2014 order and in the June 10, 2014 order. But I understand Your Honor's position on that. So let me turn briefly to the merits. Yes, and the parties had agreed that, and I'm quoting the language now, James Fryer may prepare his own report for DWR provided he removes all references to the Alliance for Water Efficiency. So you would agree that he removed all the references to AWE, right, the alliance? Well, in the draft report that started this all off, he did not, but he's claiming that he will. Yes, but in the agreement, it doesn't say he had to remove, quote, all references to other funding sources. Those words are not there. So what the rest of the agreement was on the record on March 13, 2014, was that Mr. Fryer would not solicit, seek any input, or contact any of the project advisory committee members, which we've been calling the PAC members, who the alliance was doing its report for. He was only, and same with the alliance, the alliance wasn't going to contact DWR, which is the Department for Water Resources, who Mr. Fryer was doing his report for. And the implicit and the only way that you can interpret that is that Mr. Fryer was agreeing that he wasn't then going to, in his report, put on his acknowledgment page that he was doing a report on behalf of all of the PAC members when he's already agreed that he would not solicit any input from them. You're saying just putting it in context he had agreed, but those words that I quoted were not in the agreement. Well, the words you quoted, absolutely. But I think you've got to look at the entire transcript from March 13, 2014. And that's been Mr. Fryer's position, which I disagree with, is he looks at those four words or five words, whatever, that sentence, and says that's the extent of the agreement. When if you go beyond before that day was over and we put everything on the record, there is a clear discussion and agreement that Mr. Fryer is not going to solicit this kind of input from these people. And by then he's sort of going around the entire intent of the settlement agreement by coming back and then saying, well, I know I agreed that I wouldn't solicit them and I wouldn't work with them and I wouldn't get any input from them, but I'm now entitled to put on my report that I did this report on behalf of them. How consistent with the First Amendment can a federal court insist that, A, not ever talk with B about subject C? Well, because that's what Mr. Fryer agreed to. I didn't ask about whether they agreed to something. I asked whether a federal court can order somebody not to do something. There may be lots of things that people can agree with that federal courts can't order. I can agree to play left tackle for the Chicago Bears, not that they would want me, but a federal court can't order me to play left tackle for the Chicago Bears. I understand. And I don't believe Judge Cole ordered him not to talk to anybody. Well, it would be interesting to know what magistrate Judge Cole thought he was ordering, but that's one thing we don't know. Well, and that's why, Your Honor, that's why I had always looked at that October 22, 2014 memorandum opinion and order as the driving force as to what Judge Cole was ordering. And in that order, he's merely saying that Mr. Fryer had agreed not to list the PAC members as Let's suppose he actually wrote that down. Let's suppose there is a provision in a contract between your client and Mr. Katzenbach's client saying Fryer agrees that he will, A, never again in this life talk to the grant sponsors, and, B, never say that they approved anything. How can a federal court enforce either of those terms? I can imagine awarding damages, right? If I sign a contract with the Bears to play left tackle and I then refuse, damages can be awarded, but the 13th Amendment precludes a federal court from ordering me to engage in specific performance of that contract, right? One would think it works the same way with the First Amendment. Maybe there are damages, but how can there be specific performance of a contract about speech? Well, I think in this particular case what Judge Cole was doing was establishing the parameters of the contract in the first place. I don't think he was ordering one way or the other. He was simply saying this is what the parties agreed to. Look, that's where we began. He hasn't entered any enforceable order at all. It would be nice if he thinks he's making an enforceable order to know what its terms are. But just bear with me for the second, and let's suppose that the two of you go back to the magistrate judge and he actually enters this order which says, I forbid you to mention any of the sponsors in your report. How can that be consistent with the First Amendment? Well, I don't think it in any way goes to the content or the idea or the opinions that Mr. Fryer is able to articulate. That's, of course, why Mr. Katzenbach cited Reed. The Supreme Court has said the First Amendment is not limited to things about the expression of ideas. Right. But I don't think that it is necessarily entering into a provision that is covered by the First Amendment. Of course it's covered by the First Amendment. The First Amendment applies to everything a federal court or a federal legislature or a federal executive does. There's no contention that this report is outside the scope of the First Amendment because, say, it's obscene. So the First Amendment applies. There's no doubt whatever of that. Well, I would go back to, and I understand Your Honor's frustration that it's not in the record, but I would say that what Judge Cole would be ordering is not that Mr. Fryer is prohibited from doing things, but this is what Mr. Fryer agreed to do. So do you think that if I agree with the Chicago Bears to play left tackle, a federal judge, notwithstanding the 13th Amendment, could issue an injunction compelling me to show up and play left tackle? You know how this works, I trust. If I have a contract with the Bears to play left tackle for them, I can't play left tackle for Seattle. I can't play at all for Seattle. The federal court can enter a negative injunction. Play for the Bears or play for no one. But it can't order me to play for the Bears. Right? So that's my question. You seem to want the equivalent of an injunction that says you signed this contract, I'm entitled to specific performance of this contract, this settlement agreement. I don't want damages. I don't want a negative injunction. I want specific performance. That's my question, how specific performance of an undertaking to speak or not speak could be compatible with the First Amendment. Well, I think that outside of the First Amendment, I think it's certainly permissible for Mr. Fryer to say, I agree that I won't do this. Mr. Fryer is not covered by the First Amendment. He's a private party. So are you. The judge is covered by the First Amendment. That's why I'm asking these questions. I understand, Your Honor. And I still believe, though, that Judge Cole, without getting into First Amendment issues, necessarily has to make a determination as to what the parties agreed to. And I think that's all he's doing in this case. So you think he's entered a declaratory judgment rather than an injunction? Well, I know the case law is that emotion. It would be nice to know what he thinks he's entered. Is that your defense in the end, that this is a declaratory judgment and not an injunction? Well, I do know that the case law says that emotions to enforce settlement and the rulings on those is the equivalent of an injunction. So in that respect, I guess I would have to agree with you. But I think that what was really being sought in this case was a determination as to what Mr. Fryer did or did not agree to. And when Judge Cole took the motion to enforce the settlement that was filed by the alliance, as well as a cross-motion by Mr. Fryer, and he analyzed what was on the record, he took common sense into consideration, he understood all of his involvement and all of the subsequent actions by the parties wherein they were dealing with a settlement agreement that specifically defined all of those issues that Mr. Fryer agreed to, and he properly came to a conclusion under contract interpretation that this indeed was Mr. Fryer's agreement. That's what he agreed to do. And thereafter, if he breaches that, then I agree there would be a breach of the settlement agreement that the alliance would have against Mr. Fryer for not abiding by what he agreed to. But we first have to get to the point of what is it that Mr. Fryer agreed to? And I think that is what Judge Cole was doing with respect to the cross-motions for enforcement of the settlement agreement. As for the turnover of the data, let me go to that real quickly because that's the only other issue. And I think once you get, if we can get over the judgment aspect of it, Magistrate Judge Cole, in determining what the scope of the party's agreement was, did not abuse his discretion. There was no clear error of law in that regard. There wasn't a clear erroneous finding of facts with respect to that decision. And I don't believe Mr. Fryer has articulated any basis for determining that, assuming we get the judgment from Judge Cole, that he abused his discretion in finding and making a determination as to what Mr. Fryer agreed to during the March 13, 2014 settlement. And real briefly on the data, the whole agreement was based upon each party going their separate ways and doing their own report. And as part of that, Mr. Fryer agreed that he would turn over all the data that he had obtained because there was a dispute. The whole dispute started as to who owned that data and who could use that data. He agreed to turn that over. He said in the settlement agreement, I've signed confidentiality agreements with all of these utilities. You're going to have to get releases. We said fine. Turns out one of the utilities, Santa Rosa, did not have a confidentiality agreement with Mr. Fryer, and there's no issues with regard to any breach of confidentiality with regard to that. And so, again, the intent of the whole agreement was that the alliance would have all the data it needed to complete its report. And I believe there's no abuse of discretion by Judge Cole to order Mr. Fryer to turn over that data to the alliance when there wasn't any issue with respect to confidentiality, and it was the basis with respect to the underlying agreement. If you don't have any further questions, we would rest on our breech. Thank you. Thank you. Anything further, Mr. Katzenbach? Yes, Your Honor. Judge Williams, you asked about, in response to your question, the counsel indicated that there was some agreement not to solicit, but I think went far broader than what the agreement actually was. What it was that he wouldn't solicit until other funding agencies first contacted them, and the alliance would advise the funding agencies that if they wanted to have additional input, they needed to contact Mr. Fryer, and he couldn't contact them. So when you read that context, it's clear that he's not saying, I'm not going to put them in. He's just simply saying if they want to have additional content or additional input, because it's now been a very long time, that they have to contact him first. That's hardly an agreement not to exclude them. It hardly even implies that. It doesn't even imply that. With regard to Santa Rosa, we've gone over that in detail in our briefs. I don't have anything to appreciate, but I would say this. The deal was that he would tell them who he needed releases from, and they would get releases from them. It's not up to Judge Cole to decide if he really needs that release or not. The deal was he gave them a list of what he felt he had confidentiality obligations towards, and they had to get something from them, each of those parties saying, that we agree you can give this information to aid the alliance. I just had a quick question on the First Amendment argument. You never raised that in the briefs, right? No, we did, I think, in response. I think you raised it in the oral argument in June, and the court didn't address that. In June we addressed it, and I think in connection with the further hearing on July 30th and the briefs that we submitted in advance of that, we raised the First Amendment point. And the court basically said there was no violation, or what? I don't think the court addressed it, so I can't say. I guess it's another implied decision. Okay, all right. So not addressed specifically? Not addressed specifically, just by implication, if that's helpful. Okay. I did have a practical question, if the court would indulge me. Should we advise Judge Cole that you raised concerns concerning this and that he should do better? Yes, you should. I don't want to, because there's no formal order or anything, I don't want to be stepping over bounds. What happens at oral argument is public. Yeah, no, I understand that. You can even give him a copy of the audio file. You can download it from our website and file it in the district court. We may do that, Your Honor. I think that would be helpful. Okay, thank you very much. We will give Judge Cole a little while to enter a valid order, and we will eventually take the case under advisement. Our next case for argument this morning is